**NICKELS, Charles and Nickels, Margaret on behalf of themselves and all other shareholders of Koehler Management Corp., Plaintiffs,**

v.

**KOEHLER MANAGEMENT CORPORA-TION et al., Defendants.**

No. C 74–309.

United States District Court, N. D. Ohio, W. D.

March 27, 1975.

Dennis E. Murray, Sandusky, Ohio, for plaintiffs.

Stanley Goodman, Cincinnati, Ohio, Eugene N. Balk, Maumee, Ohio, Robert

B. Gosline, Shumaker, Loop & Kendrick, Louis J. Hattner, Spengler, Nathanson, Heyman, McCarthy & Durfee, Robert W. Rowley, Toledo, Ohio, for defendants.

## OPINION AND ORDER

WALINSKI, District Judge:

This cause is before the Court upon a motion by all defendants to dismiss the case pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, on the grounds that the suit is barred by the appropriate statute of limitations. All concerned have briefed the matter.

This is a suit under the Securities Exchange Act of 1934 [hereinafter the Exchange Act], 15 U.S.C., § 78a et seq. in which a right to relief is claimed under § 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder. Plaintiff claims that he and the class of shareholders he seeks to represent suffered damages as the result of material, false and misleading statements, and the failure by defendants to disclose material facts in the merger of two corporations, American Insurance Management Corporation [hereinafter AIMC] and Ohio Indiana Mutual Corporation [hereinafter OIMC], into what is now known as Koehler Management Corporation. It is claimed that defendants failed to disclose to the shareholders the facts that OIMC had loaned defendant Koehler, who was President of both OIMC and AIMC at the time, in excess of $590,000, that there was insufficient security and reserves for the loan, that it constituted a major asset of OIMC, and that it was of doubtful collectibility and had therefore precariously weakened OIMC. Despite knowledge of these facts, it is claimed that the defendant directors approved the merger of the two corporations and recommended shareholder approval. The statement to the shareholders failed to include any of this information, and the merger was approved on May 8, 1970. Plaintiffs claim they only discovered the allegedly fraudulent acts in January, 1971.

The statute and rule on which relief is sought contain no statute of limitations. It is thus the federal policy to adopt an appropriate local law of limitations. 28 U.S.C., § 1652; United Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); Cope v. Anderson, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947); Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946); Campbell v. Haverhill, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280 (1895). In Connelly v. Balkwill, 174 F.Supp. 49, 63–4 (N.E.E.D.Ohio 1959), aff'd, 279 F.2d 685 (1960), the Eastern Division of this Court applied the general fraud statute of limitations, § 2305.09, Ohio Revised Code, in a suit under § 10(b) and Rule 10b–5. There was no suggestion in that case that another statute in the Ohio Blue Sky Law might apply, and the choice was merely between the general fraud statute and another one limiting actions brought on a liability created by a statute.

Then in Charney v. Thomas, 372 F.2d 97 (6th Cir. 1967), the Sixth Circuit again applied the general Michigan fraud statute of limitations. In so doing, the court said that while in some cases the local Blue Sky statute of limitations might be more appropriate, it would decline to use the Michigan statute because Michigan law contained no provision similar to § 10(b). But the court began by noting that as of that time no other court had ever applied a Blue Sky Law limitations provision.

Since then the reverse is nearly true. Decisions in the Fifth, Seventh and Eighth Circuits have now applied Blue Sky Law statutes of limitations in preference to fraud statutes. See Hudak v. Economic Research Analysts, Inc., 499 F.2d 996 (5th Cir. 1974); Parrent v. Midwest Rug Mills, Inc., 455 F.2d 123 (7th Cir. 1972), and Vanderboom v. Sexton, 422 F.2d 1233 (8th Cir.), cert. denied, 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed. 2d 90 (1970). As articulated in *Hudak* the rule applied by these Courts, repre-

senting the modern weight of authority, appears to be:

"[t]he limitation period which the forum state applies to the state remedy which bears the closest substantive resemblance to rule 10b–5 and which best effectuates its purpose is to be applied." Hudak v. Economic Research Analysts, Inc., *supra* 499 F.2d at 999.

Plaintiffs' argument herein runs as follows: Connelly v. Balkwill, *supra,* and Charney v. Thomas, *supra,* are still the law in this Circuit.[1] Under these holdings, this Court should apply the general fraud statute of limitations, § 2305.09, Ohio Revised Code; and that period is four years. Since, under Holmberg v. Armbrecht, *supra,* the running of a state statute in federal securities law cases is governed by the federal equitable doctrine which tolls the statute until the fraud is discovered, and since the fraud herein, if any, was discovered in January, 1971, this case was timely filed in August, 1974, and is not barred by § 2305.09. Plaintiffs further argue that even if *Charney* and *Connelly* could be said to have been undermined by *Hudak* and other decisions, the Ohio Blue Sky Law contains no provision similar to § 10(b) and Rule 10b–5 since the Ohio provisions uniformly require proof of scienter while the federal provisions do not. Therefore, § 2305.09 is still the most appropriate statute to apply.

Defendants contend otherwise. They argue that *Charney* and *Connelly* are both outdated and, in essence, that the Sixth Circuit would follow *Hudak* were it deciding the issue today. They further contend that the Court should look to the Ohio Blue Sky Law limitations and apply the relevant statute, § 1707.–43,[2] Ohio Revised Code, to the facts of this case. That section contains a two-year limitations period. Since the fraud, if any, was discovered in January, 1971, this case was not timely filed in 1974 and must be dismissed.

After a careful examination of these arguments and authorities, this Court has concluded that defendants should prevail. Initially, the Court concludes that plaintiffs' reliance on *Charney* and *Connelly* is misplaced.

In *Connelly,* the plaintiffs first sued on their claim in an Ohio state court and based their claim on common law fraud. After losing in the trial court, they also lost in the Ohio appellate courts. Only then did they file their action in federal court. While alleging essentially the same facts, they based their right to relief on § 10(b) and Rule 10b–5. In claiming that the action was barred by the statute of limitations, as well as by the doctrine of res judicata, defendants did not suggest that the Court apply an Ohio Blue Sky Statute of Limitations, because the claim was arguably barred by even the more generous fraud limitations. The limitations issue turned instead on whether the limitations period of § 2305.07, Ohio Revised Code, which deals with suits on a liability created by a statute, should be applied instead of the fraud limitations. Thus, the Court had no occasion whatever to deal with the specific issue now faced by this Court. It is thus difficult for this Court to understand how plaintiffs could therefore have assumed that *Connelly* would control this issue and thus rely thereon that they would have four years to file their complaint.

In *Charney,* plaintiffs sued in federal court claiming a right to relief under § 16(b), and apparently under the Michigan common law of fraud as well. The

---

1. *See also* Toledo Trust Co., etc. v. Nye, 392 F.Supp. 484 (N.D.W.D.Ohio, Memorandum Opinion filed Feb. 25, 1975), per Young, J., which followed the *Charney* rule.

2. "No action for the recovery of the purchase price as provided for in this section, and no other action for any recovery based upon or arising out of a sale or contract for sale made in violation of sections 1707.01 to 1707.45, inclusive, of the Revised Code, whether based upon contract or tort, and whether legal or equitable in nature, shall be brought after two years from the date of such sale or contract for sale."

district judge dismissed the case on the basis that the plaintiffs' sole remedy on the state claim lay under the state Blue Sky Law, and that claim was barred by the state two-year Blue Sky statute of limitations on recission. The court also held that the federal claim was barred by the same statute, rather than the fraud limitations. The Sixth Circuit reversed the district court on both counts.

As to the latter, the Sixth Circuit appears to have been strongly influenced by the utter lack of case authority preferring the Blue Sky limitations. This is illustrated by an examination of the cases cited by the court. 372 F.2d at 100.

In Janigan v. Taylor, 344 F.2d 781 (1st Cir. 1965), the only question was whether the Massachusetts statute of limitations being applied was tolled until the fraud was discovered. The court ruled that it was under the now generally recognized doctrine of Holmberg v. Armbrecht.

In Fratt v. Robinson, 203 F.2d 627 (9th Cir. 1953), the issue was whether the applicable statute was the general fraud statute of limitations or the one limiting actions on a liability created by statute. In preferring the former, the *Janigan* court appeared to be holding that § 10(b) and Rule 10b–5 do nothing more than condemn common law fraud when it is carried out by the mails or an instrumentality of interstate commerce, a proposition now suspect.

The court in Azalea Meats, Inc. v. Muscat, 246 F.Supp. 780 (S.D.Fla.1965), rev'd on other grounds, 386 F.2d 5 (5th Cir. 1967), preferred a Florida statute limiting actions on a liability created by statute to the fraud limitations; while this court in Connelly v. Balkwill, *supra,* had decided the same issue contra.

Given this internal inconsistency of authorities, it is clear that the Sixth Circuit was influenced by the nearly total failure of anyone even to raise the

issue of Blue Sky Law applicability as well as the absence of case law. As previously shown, however, this is no longer so; and the recent circuit decisions prefer the various Blue Sky Law limitations periods. For these reasons, this Court concludes that *Charney* and *Connelly* do not mandate an application of § 2305.09 to this case; and the Court will now consider which limitations law applies.

■ The Court begins with the premise that any limitations period chosen must be one which best effectuates the federal policies underlying the federal securities laws. Of course, to determine those policies, the Court turns to the statutes themselves.

■ That the Securities Act of 1933 and the Securities Exchange Act of 1934 are remedial acts which must be broadly construed to effect their purposes goes without saying. And the Supreme Court has only recently confirmed that these acts were intended by Congress "to be construed 'not technically and restrictively, but flexibly to effectuate [their] remedial purposes.' " Affiliated Ute Citizens v. United States, 406 U.S. 128, 151, 92 S.Ct. 1456, 1471, 31 L.Ed.2d 741 (1972).

Although § 10(b) of the Exchange Act contains no limitations provision, every other provision of the two Acts which creates a civil liability does contain a limitations period.[3] *See, e. g.,* 15 U.S.C., § 77m (one year for actions for failure to register, one year from discovery or three years from sale on actions by buyers for material omissions or misstatements); 15 U.S.C., § 78i(e) (one year from discovery and three years from event on actions based on manipulative and fraudulent actions on a national securities exchange); 15 U.S.C., § 78r (similar one and three year provisions for actions based on false or misleading statements in filings with the SEC); and 15 U.S.C., § 78cc(b) (same

---

3. This analysis is suggested in Martin, "Statutes of Limitations in 10b–5 Actions: Which State Statute is Applicable?", 29 Bus.Law. 443 (1974).

with respect to actions seeking to void contracts made in violation of the Exchange Act or any rule thereunder).

This virtually unbroken pattern of limitations of one year from discovery and absolute bar after three years from sale or other event strongly suggests a Congressional policy favoring short limitations periods rather than the longer ones found in many states' common law fraud statutes. Moreover, the subject of Congressional attention in these Acts is an item of highly fluctuating value with rapid overnight changes. That Congress was aware of this is apparent in § 2(3) and (4) of the Exchange Act where Congress twice speaks of "sudden and unreasonable fluctuations" in the price of securities. Unduly long limitations periods would appear to permit those who claim to be aggrieved by violations of the Act to lie in wait for the stock market to take a propitious turn before they visit the courthouse. While this Court has little sympathy for those who prey on the gullible and the unwary, the fact that Congressional policy is to protect the innocent investor does not mean that Congress also intended to favor one who "loses his innocence and then waits to see how his investment turns out before he decides to invoke [the Act]." Royal Air Properties v. Smith, 312 F.2d 210 (9th Cir. 1962), and Hecht v. Harris, Upham & Co., 283 F.Supp. 417 (N.D.Cal.1968).

And finally, since Congress has included registration, reporting and disclosure provisions throughout the Acts, it appears that Congress has sought to facilitate the discovery of fraud by the reasonably vigilant investor. For these reasons, the Court concludes that it is the policy of the federal laws involved herein to favor a relatively short statute of limitations in selecting among the state statutes arguably applicable and to toll the statute until discovery.

Applying the "resemblance" test used in Hudak v. Economic Research Analysts, Inc., supra, and Parrent v. Midwest Rug Mills, *supra,* it is at once apparent that § 1707.44 bears a closer resemblance to an action under Rule 10b–5 than it does to an action in common law fraud and deceit.[4] Plaintiffs make the sweeping assertion that the scienter requirement of a fraud action and § 1707.44 is now no longer a part of a Rule 10b–5 action. This Court is less sure of the existence of the scienter requirement in a Rule 10b–5 action than is plaintiff. However, it is not necessary to decide that issue in order to find a closer resemblance in § 1707.44, because the Ohio Blue Sky Law deals with the same subject, with largely the same goals and underlying policies, as do the federal securities laws. It is a specific statutory scheme dealing with the same subject as the federal scheme, while an action in fraud and deceit is not so limited. The mere fact that both the Ohio Blue Sky Law and a common law fraud action require proof of scienter, while Rule 10b–5 may not, does not serve to make the fraud statute more appropriate. Since both have the scienter requirement, this only points up more clearly the need for federal legislation. In any case, to borrow from the Fifth Circuit:

> "federal courts borrow only the chronometric aspects and not the procedural or substantive nuances of the forum." Wolf v. Frank, 477 F.2d 467, 475 (5th Cir. 1973).

The Court feels it necessary to discuss one final matter. As previously noted, Judge Young of this very Court has very recently decided this precise issue in favor of the Ohio fraud statute rather than the Blue Sky Law. Toledo Trust Co. v. Nye, *supra.* However, it appears in that case that Judge Young was primarily influenced by two matters.

---

4. This test cannot be considered at odds with anything in Charney v. Thomas, because there the Sixth Circuit itself declared that the federal courts must apply the state statute "which best effectuates the federal policy at issue." 372 F.2d at 100.

First, in that case the plaintiff was the personal representative of a seller of securities who was deceased. In part, it was claimed that the decedent was wronged by the failure of the defendants to disclose to the decedent the fact that the company whose securities they sought to purchase had received merger proposals from another company and that proposed merger would have enhanced the value of the securities in the hands of the decedent. In reading the Ohio Blue Sky Law, Judge Young concluded that the plaintiff therein had no remedy thereunder whatever and that his sole state remedy lay, presumably, under an action in fraud and deceit. Thus, under the resemblance test used herein, it might be argued that the fraud limitations was used because it was the only statute which resembled the remedy provided by Rule 10b–5.

Secondly, it appears that the alleged fraud in *Nye* was discovered on August 13, 1970, and the action was filed on August 18, 1972; so that the plaintiff, an executor of the defrauded decedent's estate, was only late in filing by a period of five days if one applied the two-year limitations of § 1707.43. This Court prefers to view Judge Young's decision as an application of the "flexibility" commanded by *Affiliated Ute Citizens,* *supra,* and the equity notions, as discussed in Holmberg v. Armbrecht, *supra,* which lie at the heart of a federal court's use of a state statute of limitations in an action where the rights and liabilities are created by federal law. As Mr. Justice Frankfurter said:

"[s]uch statutes have been drawn upon by equity solely for the light they may shed in determining that which is decisive for the chancellor's intervention, namely, whether the plaintiff has inexcusably slept on his rights so as to make a decree against the defendant unfair. * * * A federal court may not be bound by a State statute of limitation and yet that court may dismiss a suit where the plaintiffs' 'lack of diligence is

wholly unexcused; and both the nature of the claim and the situation of the parties was such as to call for diligence * * *.'" *Id.* 327 U.S. at 396, 66 S.Ct. at 584.

Thus, the Court finds the *Nye* decision distinguishable from the case at bar, since there are no similar equitable principles operating in favor of plaintiffs here.

For the foregoing reasons, the Court holds that plaintiffs' claims herein are barred by application of the Ohio Blue Sky Law statute of limitations, § 1707.-43, Ohio Revised Code, and the cause is dismissed.

It is so ordered.